[Cite as *Skycasters, L.L.C. v. Kister*, 2021-Ohio-4154.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

SKYCASTERS, LLC, et al.

    Appellants

    v.

MICHAEL KISTER, et al.

    Appellees

C.A. No.    29660

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV-2016-04-1899

DECISION AND JOURNAL ENTRY

Dated: November 24, 2021

TEODOSIO, Judge.

{¶1}    Skycasters, LLC and Satventures Management, LLC (collectively "Skycasters") appeal from the judgment of the Summit County Court of Common Pleas.  We affirm.

I.

{¶2}    Skycasters, LLC, is an internet service provider that provides satellite-based internet connections to its customers.  Satventures Management, LLC, provides employees, management services, and other services to Skycasters, LLC.  Richard McKinney was employed as a salesperson by Skycasters from December 2001 through June 2014 and signed a Confidentiality Noncompetition and Nonsolicitation Agreement ("Noncompetition Agreement") in 2011.  Michael Kister was hired by Skycasters in January 2008 as the vice-president of marketing and operations and was promoted to president within six months.

{¶3}    While working for Skycasters, Mr. McKinney began developing a new business enterprise called Acceleration Systems and developed a software technology that would

compress data files to allow for the faster transmission of data through the internet. Mr. McKinney approached Mr. Kister with the idea for Acceleration Systems in October 2010, after which the two began working together on the project while they were both employed by Skycasters. Mr. Kister resigned from Skycasters in March 2013 and Mr. McKinney resigned in June 2014, with the two formally launching Acceleration Systems in 2014. Skycasters contends that the actions of Mr. McKinney in secretly developing Acceleration Systems during his employment with Skycasters violated the Noncompetition Agreement he had signed, alleging that Mr. McKinney had used and shared confidential information, solicited customers, and competed with Skycasters.

{¶4} In April 2016, Skycasters filed its original complaint against Mr. McKinney and Mr. Kister, with an amended complaint having been filed in December 2016. The case was stayed as to Mr. Kister due to the filing of bankruptcy. In September 2018, a second amended complaint was filed naming only Mr. McKinney and Kelly Olsen (who was later voluntarily dismissed by Skycasters) as defendants, alleging claims for breach of contract, breach of duty of loyalty and good faith, fraud, tortious interference with contract and business relations, and civil conspiracy.

{¶5} Prior to trial, Mr. McKinney filed a motion for summary judgment that was denied by the trial court. Mr. McKinney also filed a motion in limine to exclude evidence related to the claim of civil conspiracy, which was granted off the record, with the trial court further dismissing the claim for civil conspiracy. Also prior to trial, Skycasters filed a motion for a jury instruction on adverse inference, which was not included in the instructions given by the trial court.

{¶6} At trial, after Skycasters presented its case-in-chief, the trial court granted a motion for directed verdict on the claims for fraud and tortious interference. The remaining claims for breach of contract and breach of duty of loyalty and good faith were sent to the jury for deliberation. The jury answered interrogatories indicating that it found that Mr. McKinney had breached both his contract and his duty of loyalty and good faith. In answering the interrogatories, the jury further found that Skycasters had not suffered any damages as a direct and proximate result of either breach. Although the jurors had been instructed that if no damages were found, they were to sign the verdict forms in favor of the defendant, the jurors instead signed the verdict forms in favor of the plaintiffs. The trial court judge indicated that he would enter judgment in favor of the defendant in accordance with the interrogatories. Initially, the trial court filed an entry granting judgment in favor of the plaintiffs in the amount of $0.00. Four days later, the trial court filed a nunc pro tunc judgment entry granting judgment in favor of the defendant in accordance with the interrogatories.

{¶7} An attempted appeal to this Court was dismissed because the trial court had not journalized an entry resolving the claims for civil conspiracy, fraud, and tortious interference. The trial court subsequently entered judgment indicating that it had issued a direct verdict on the claims of fraud and tortious interference and that the claim for civil conspiracy had been dismissed prior to trial as "a matter of law." Skycasters now appeals, raising five assignments of error that have been reordered for the purposes of this analysis.

II.

ASSIGNMENT OF ERROR ONE

THE TRIAL COURT ERRED IN GRANTING A DIRECTED VERDICT ON APPELLANTS' CLAIMS OF FRAUD (COUNT III) AND TORTIOUS INTERFERENCE WITH CONTRACT AND BUSINESS RELATIONS (COUNT V) ON THEIR SECOND AMENDED COMPLAINT.

**{¶8}** In its first assignment of error, Skycasters argues the trial court erred in granting a directed verdict on their claims for fraud and tortious interference with contract and business relations.

**{¶9}** A motion for directed verdict tests the legal sufficiency of the evidence supporting a claim. *Ruta v. Breckenridge-Remy Co.*, 69 Ohio St.2d 66, 68 (1982). "Under Civ.R. 50(A)(4), a motion for directed verdict can only be granted when, having construed the evidence most strongly in favor of the nonmoving party, the court concludes that reasonable minds could only reach one conclusion upon the evidence submitted and that conclusion is adverse to the nonmoving party." *Woodside Mgt. Co. v. Bruex*, 9th Dist. Summit No. 29179, 2020-Ohio-4039, ¶ 50. "By the same token, if there is substantial competent evidence to support the party against whom the motion is made, upon which evidence reasonable minds might reach different conclusions, the motion must be denied." *Hawkins v. Ivy*, 50 Ohio St.2d 114, 115 (1977). Because a motion for directed verdict presents a question of law, this Court's review is de novo. *Jackovic v. Webb*, 9th Dist. Summit No. 26555, 2013-Ohio-2520, ¶ 6.

**{¶10}** At the conclusion of Skycasters' presentation of its case at trial, the trial court granted a direct verdict on the claims for fraud and tortious interference with contract and business relations. In issuing the verdict, the trial court noted that the case involved an employment dispute claim and found that the law relative to employment encompassed the claims for tortious interference and fraud. The trial court further found the claims for fraud and tortious interference were "evidentiary matters" contained within the claims for breach of the employment agreement and breach of fiduciary duty of good faith and fair dealing and that "to have four separate claims would be an overlap and confusing to any jury."

**{¶11}** As we have noted, "a motion for directed verdict can only be granted when, having construed the evidence most strongly in favor of the nonmoving party, the court concludes that reasonable minds could only reach one conclusion upon the evidence submitted and that conclusion is adverse to the nonmoving party." *Woodside Mgt.* at ¶ 50. It is apparent from the record the trial court did not apply this standard, but rather granted a directed verdict on the premise that the claims were duplicative and would be confusing to the jury.

**{¶12}** Although the trial court did not apply the correct standard in granting the directed verdicts, "[u]nder Rule 61 of the Ohio Rules of Civil Procedure, harmless errors are to be disregarded." *Oak Park Mgt. Corp. v. Via*, 9th Dist. Wayne No. 07CA0022, 2008-Ohio-2493, ¶ 5. "No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." Civ.R. 61. We therefore proceed to examine whether any substantive right was affected.

**{¶13}** "In Ohio, a breach of contract does not create a tort claim." *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio St.3d 137, 151 (1996), citing *Wolfe v. Continental Cas. Co.* 647 F.2d 705, 710 (6th Cir.1981). "Generally, 'the existence of a contract action * * * excludes the opportunity to present the same case as a tort claim.'" *Id.*, quoting *Wolfe* at 710. "A tort claim based upon the same actions as those upon which a claim of contract breach is based will exist independently of the contract action only if the breaching party also breaches a duty owed separately from that created by the contract, that is, a duty owed even if no contract existed." *Id.*,

citing *Battista v. Lebanon Trotting Assn.*, 538 F.2d 111, 117 (6th Cir.1976). "In addition to containing a duty independent of that created by contract, an action arising out of contract which is also based upon tortious conduct must include actual damages attributable to the wrongful acts of the alleged tortfeasor which are *in addition* to those attributable to the breach of the contract." *Id.* (Emphasis sic.)

{¶14} Skycasters presented evidence of alleged damages of lost profits as a result of Mr. McKinney's conduct in breaching the agreement. No separate damages were presented that were specifically attributed to the claims for tortious interference or fraud. Thus, no actual damages attributable to Mr. McKinney under the claims for tortious interference and fraud were in addition to those attributable to the breach of contract. The jury found that no damages were attributable to Mr. McKinney as a direct and proximate result of his breach of contract or as a result of his breach of duty of loyalty and good faith. Because no additional damages were attributed to tortious interference or fraud, and because no damages were found as a direct and proximate result of the breach of contract and breach of duty, we conclude that no substantive right was affected.

{¶15} Skycasters' first assignment of error is overruled.

ASSIGNMENT OF ERROR TWO

THE TRIAL COURT ERRED IN GRANTING A MOTION IN LIMINE AND DISMISSING APPELLANTS' CLAIM OF CIVIL CONSPIRACY (COUNT VI).

{¶16} In its second assignment of error, Skycasters argues the trial court erred in granting a motion in limine and dismissing the claim of civil conspiracy.

{¶17} Prior to trial, Mr. McKinney filed a motion to exclude evidence related to the claim of civil conspiracy. In its brief to this Court, Skycasters states that the conspiracy count

was not discussed on the record, but rather was dismissed in chambers. The trial court's post-trial order of January 2, 2020, provides: "The Court granted Richard McKinney's motion to exclude evidence related to Plaintiffs' claim for Civil Conspiracy and dismissed Plaintiffs' Civil Conspiracy ("Count VI") claim prior to the commencement of trial as a matter of law."

{¶18} Skycasters argues that the motion in limine was essentially a rephrased motion for summary judgment and should not have been considered. As to the merits of the motion, Skycasters contends that the fact that Mr. McKinney was the only remaining defendant did not affect the viability of a claim for civil conspiracy.

{¶19} "In the absence of a complete record or a substitute statement of the evidence as permitted by App.R. 9(C) and (D), an appellate court must presume regularity in the trial court's proceedings and accept the validity of its judgment." *Butler v. Akron Gen. Med. Ctr.*, 9th Dist. Summit No. 17187, 1995 WL 622939, *1 (Oct. 25, 1995). Although we generally agree that a ruling on a motion in limine, as an interlocutory ruling, is not a proper vehicle for the dismissal of a cause of action prior to trial, there is no record of the ruling or proffered evidence for this Court to review. We therefore cannot ascertain the nature of the trial court's ruling, any discussions that may have occurred, or the grounds for the dismissal of the claims. Because Skycasters did not avail themselves of App.R. 9(C), we must presume regularity in the trial court proceedings and accept the validity of the judgment.

{¶20} Skycasters' second assignment of error is overruled.

ASSIGNMENT OF ERROR THREE

THE TRIAL COURT ERRED IN DENYING APPELLANTS' MOTION FOR A
JURY INSTRUCTION ON ADVERSE INFERENCE.

{¶21} In its third assignment of error, Skycasters argues the trial court erred by denying its motion for a jury instruction on adverse inference.

**{¶22}** A requested jury instruction should be given if it is a correct statement of the law applicable to the facts of the case and reasonable minds might reach the conclusion sought by the instruction. *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 591 (1991). An appellate court reviews whether the trial court's failure to give a requested instruction constitutes an abuse of discretion under the facts and circumstances of the case. *State v. Wolons*, 44 Ohio St.3d 64, 68 (1989).

**{¶23}** The giving of jury instructions is within the sound discretion of the trial court. *State v. Brady*, 9th Dist. Summit No. 22034, 2005–Ohio–593, ¶ 5, citing *State v. Hipkins*, 69 Ohio St.2d 80, 82 (1982). We review such a decision under an abuse of discretion standard. *State v. Clay*, 9th Dist. Medina No. 04CA0033–M, 2005–Ohio–6, ¶ 5. An abuse of discretion connotes more than an error of law or judgment; it implies an attitude on the part of the court that is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Therefore, the decision of the trial court will not be disturbed on review unless the trial court acted unreasonably, arbitrarily or unconscionably. *Brady* at ¶ 5.

**{¶24}** "In order to demonstrate reversible error with respect to a trial court's refusal to give a proposed instruction, an appellant must demonstrate that, first, the trial court abused its discretion by failing to give the requested instruction, and second, that the appellant was prejudiced as a result." *Carpenter v. Wellman Products Group*, 9th Dist. Medina No. 03CA0032–M, 2003–Ohio–7169, ¶ 12, citing *Irvine v. Akron Beacon Journal*, 147 Ohio App.3d 428, 2002–Ohio–2204, ¶ 31 (9th Dist.).

**{¶25}** An adverse inference may arise where a party who has control of a piece of evidence fails to provide the evidence without satisfactory explanation. *Poseidon Environmental Servs., Inc. v. Nu Way Indus. Waste Mgt., LLC*, 7th Dist. Mahoning No. 16 MA 0083, 2017-

Ohio-9407, ¶ 18, citing *Vidovic v. Hoynes*, 11th Dist. Lake No. 2014-L-054, 2015-Ohio-712, ¶ 78, citing *Schwaller v. Maguire*, 1st Dist. Hamilton No. C-02055, 2003-Ohio-6917, ¶ 24. "Under those circumstances, the jury may draw an inference that would be unfavorable to the party who has failed to produce the evidence in question." *Id.* "This allows courts to give such a charge where there is a showing of 'malfeasance' or 'gross neglect.'" *Id.*

{¶26} In the case sub judice, Skycasters had requested a jury instruction on adverse inference as to e-mails deleted by Mr. McKinney. Skycasters' motion specifically references an e-mail exchange between Mr. McKinney and Mr. Kister which had inadvertently been sent to a Mr. McKinney's Satventures Managmement e-mail account. In his testimony at trial, Mr. McKinney admitted that he wanted the e-mails to be deleted because he did not want Skycasters to discover the e-mails. The e-mail chain, however, was admitted into evidence, and thus was neither effectively deleted nor unavailable to Skycasters. There is no abuse of discretion in the trial court's refusal to give an adverse inference jury instruction under these circumstances.

{¶27} Although not mentioned in their motion to the trial court or in their initial brief to this Court, Skycasters' reply brief references approximately one year of e-mails deleted by Mr. McKinney on his personal Gmail account. A party cannot raise an argument to this Court that it did not first raise below. *See Fairlawn Assoc., Ltd. v. Summit Cty. Bd. of Revision and Fiscal Officer*, 9th Dist. Summit No. 22238, 2005–Ohio–1951, ¶ 8. Neither do we consider arguments raised for the first time in a reply brief. *See In re Songer*, 9th Dist. Lorain No. 01CA007841, 2001 WL 1162831, *6 (Oct. 3, 2001).

{¶28} Skycasters' third assignment of error is overruled.

ASSIGNMENT OF ERROR FIVE

THE TRIAL COURT ERRED IN ISSUING A JUDGMENT IN FAVOR OF APPELLEE, RICHARD MCKINNEY, ON APPELLANTS' CLAIMS OF

BREACH OF CONTRACT (COUNT I) AND BREACH OF DUTY OF LOYALTY AND GOOD FAITH (COUNT II) EVEN THOUGH THE JURY FOUND IN FAVOR OF APPELLANTS ON THESE CLAIMS.

{¶29} In its fifth assignment of error, Skycasters argues the trial court erred in issuing a judgment in favor of Mr. McKinney on the claims for breach of contract and breach of duty of loyalty and good faith even though the jury had found in favor of Skycasters on those claims. We disagree.

{¶30} Under Civ.R. 49(B), when the general verdict is consistent with the interrogatory answers, the court "shall" enter "the appropriate judgment upon the verdict and answers." If there is an inconsistency between the general verdict and one or more interrogatory answers, then the trial court "may" do one of three things: (1) enter judgment in accordance with the interrogatory answers, notwithstanding the general verdict, (2) return the jury for further consideration of the interrogatories and the general verdict, or (3) order a new trial. *Id.*

{¶31} The interrogatories signed by the jury indicated that Mr. McKinney had breached his duty of loyalty and good faith owed to the plaintiffs and that plaintiffs had not suffered any damages as a direct and proximate result of the breach of duty. Likewise, the interrogatories indicated that the jury found that Mr. McKinney had breached his contract with plaintiffs, but that plaintiffs had not suffered damages as a result of the breach of contract. Although the interrogatory instructions indicated that if no damages were found, the general verdict forms in favor of the defendant were to be signed, the jurors instead signed the general verdict form for the plaintiffs as to breach of duty and breach of contract with an amount of "zero" indicated for damages.

{¶32} The trial court recognized that the jurors incorrectly signed the verdict form in favor of Skycasters despite the directions provided in the interrogatories, stating: "The issue then

becomes they have signed a general verdict for the Plaintiff but have not found any damages; therefore, I will be, in accordance with the interrogatories, granting judgment in favor of the Defendant on both of those claims." No objections or motions were subsequently made prior to court being adjourned.

{¶33} On June 28, 2019, the trial court initially entered judgment in favor of Plaintiffs on the claims for breach of duty and breach of contract and awarded zero damages. On July 2, 2019, the trial court entered a nunc pro tunc judgment entry noting that because there were no damages attributable to Mr. McKinney, judgment was in favor of the defendant on the claims.

{¶34} Pursuant to Civ.R. 49(B), a trial court may enter judgment in accordance with the interrogatory answers, notwithstanding the general verdict. The trial court indicated on the record at trial that it would enter judgment in favor of the defendant in accordance with the interrogatories. Although the initial judgment entry entered judgment in favor of the plaintiffs, the trial court corrected its mistake through a nunc pro tunc entry. We find no error in the trial court issuing judgment in favor of Mr. McKinney on these claims.

{¶35} Skycasters' fifth assignment of error is overruled.

ASSIGNMENT OF ERROR FOUR

THE JURY'S FINDING IN FAVOR OF APPELLANTS, BUT AWARDING ZERO DAMAGES WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THE TRIAL COURT ERRED IN UPHOLDING THEIR ZERO DAMAGES AWARD.

{¶36} In its fourth assignment of error, Skycasters argues the trial court erred in upholding the award of zero damages because it was against the manifest weight of the evidence. We do not agree.

{¶37} "[B]efore an appellate court will reverse a judgment as against the manifest weight of the evidence in a civil context, the court must determine whether the trier of fact, in

resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice." *Boreman v. Boreman*, 9th Dist. Wayne No. 01CA0034, 2002-Ohio-2320, ¶ 10. "Only in the exceptional case, where the evidence presented weighs heavily in favor of the party seeking reversal, will the appellate court reverse." *Id.* In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 21.

{¶38} In support of its argument, Skycasters points to testimony that it had lost at least 14 customers as a result of Mr. McKinney's breaches of duty and contract; that Mr. McKinney was the salesperson on all 14 of those accounts; and that Skycasters was forced to lay-off four employees due to losing the customers. Skycasters further points to its expert report indicating that it had lost between $2.2 and $2.35 million in profits from the loss of the 14 customers, and that its annual revenue dropped between 22% to 27% after Mr. McKinney had left the company.

{¶39} As to the 14 lost customers, Mr. McKinney testified that 13 of the 14 were in the oil and gas business, and that oil prices had plummeted at the time, which was "a death knell for some of them" and that at least two went out of business altogether. Mr. McKinney further testified that the average life of a Skycasters account was 3.82 years and that 138 accounts were cancelled within their first two years.

{¶40} Mr. Mckinney also gave testimony that Acceleration Systems in no way competed with Skycasters due to the differing nature of the service provided: the latter being an internet service provider, while the former provided a technology to increase the speed of data over the internet. He stated that Acceleration Systems was a "total failure," had only four customers, and that none of the 14 customers identified by Skycasters ever became customers of Acceleration Systems. Mr. McKinney further testified that he had never asked any of Skycasters' customers

to terminate their relationship with Skycasters or to join up with a different internet service provider and that he had "zero reason" to do so. Given the testimony presented, we cannot conclude that the jury clearly lost its way and created a manifest miscarriage of justice.

{¶41} Skycasters also argues that a finding that Mr. McKinney had breached his contract without also finding damages is legally improper under Ohio law. In the case sub judice, the jury answered affirmatively to an interrogatory asking if they found by a preponderance of evidence that Mr. McKinney had breach his contract with Skycasters. In a follow-up interrogatory, the jury indicated that Skycasters had suffered no damages as a direct and proximate result of the breach of contract. In accordance with the interrogatories, the trial court entered judgment in favor of the defendant.

{¶42} The elements for claim for breach of contract include the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff. *Preferred Capital, Inc. v. Sturgil*, 9th Dist. Summit No. 21787, 2004-Ohio-4453, ¶ 11. We have more recently restated these same elements as follows: "To set forth a claim for breach of contract, a complaining party must prove the following elements by a preponderance of the evidence: (1) that a contract existed; (2) that the complaining party fulfilled its contractual obligations; (3) that the opposing party failed to fulfill its obligations; and (4) that the complaining party incurred damages as a result of this failure." *Community Health Partners Physicians, Inc. v. Sharbeck*, 9th Dist. Lorain No. 10CA009874, 2011–Ohio–4033, ¶ 7, quoting *H & F Transp., Inc. v. Satin Ride Equine Transport, Inc.*, 9th Dist. Medina No. 06CA0069–M, 2008–Ohio–1004, ¶ 18.

{¶43} "A claimant seeking to recover for breach of contract must show damage as a result of the breach." *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137,

144 (9th Dist.1996). "Damages are not awarded for a mere breach of contract; the amount of damages awarded must correspond to injuries resulting from the breach." *Id.* "When a plaintiff in a breach of contract action proves breach at trial but fails to prove actual damages, the trial court may award nominal damages, but is not required to do so in every case." *Cambridge Co., Ltd. v. Telsat, Inc.*, 9th Dist. Summit No. 23935, 2008-Ohio-1056, ¶ 11. Consequently, there is no legal inconsistency in the trial court finding that a claim for breach of contract was not proven where the jury found a breach by the defendant but further found no damages resulting from the breach.

{¶44} Skycasters further argues that they should have been awarded reasonable attorneys' fees and all court costs as damages pursuant to the Noncompetition Agreement. We disagree. The only evidence of damages presented to the jury were for lost profits in the amount of $2,338,743 as testified to by Skycasters' expert witness and as stated in Skycasters' closing argument. No argument was made either to the jury or to the trial court for damages reflecting attorneys' fees or court costs.

{¶45} Skycasters' fourth assignment of error is overruled.

III.

{¶46} Skycasters' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

THOMAS A. TEODOSIO
FOR THE COURT

CALLAHAN, P. J.
CONCURS.

CARR, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

CHRISTOPHER B. CONGENI and RICHARD L. HILBRICH, Attorneys at Law, for Appellants.

MICHAEL L. FORTNEY, Attorney at Law, for Appellee.

MICHAEL R. FORTNEY, Attorney at law, for Appellee.